OPINION OF THE COURT
Lewis L. Douglass, J.
This is a motion to settle attorney’s fee which arose out of a dispute between a law firm and one of its former employees who, when she resigned, took a negligence case with her, which she settled* approximately six months after leaving the firm.
Ms. Michele Turchin was originally employed by Bauman, Greene, Sims & Kunkis in 1977. She resigned in 1980, following a salary dispute. She and one of the partners thereafter met while in one of the court buildings and struck up a conversation about her return to the firm. That courthouse corridor conversation led to a dinner meeting where they agreed that Ms. Turchin would resume her employment at a salary of approximately $27,500 per annum plus 50% of the net fees earned by the firm on cases she brought to the firm.
*700 Sometime after commencing employment Ms. Turchin brought a significant negligence case to the firm. As an employee of the firm she prepared the pleadings and initiated the lawsuit. While the case was pending, she resigned, on amicable terms, and took the case with her. The method of “taking” the case was to have the client execute a substitution of attorney form from the Bauman firm to Ms. Turchin individually. The substitution of attorney form included the typed notation: “Bauman, Greene, Sims & Kunkis, P. C. retains an outgoing attorney lien for services rendered if the court so determines.”
Now that the case has been settled by Ms. Turchin, they disagree about how the contingent fee of $13,935 should be distributed.
The firm argues that it would be unfair to permit young associates to use a firm’s long-established good reputation, have the firm cover all overhead and then, having built their own reputation, without incurring the start-up costs associated with developing expertise and reputation, leave taking, in particular, negligence cases which would involve the possibility of large settlements in the future. The firm, therefore, argues that when Ms. Turchin left they had a 50% lien on the future fee.
Ms. Turchin, on the other hand, argues that the agreement to split the fee was not predicated on the assumption that she would remain with the firm for the length of time it might take to conclude a significant negligence case. The firm, she argues, could have dismissed her at any time, as it could dismiss any employee, and that she assumed that she was free to pursue her career options without giving up her interest in the contingent fees on cases she generated. She concedes that the firm is entitled to be compensated on a quantum meruit basis for the work she did on the case while she was the firm’s employee,'but argues that the firm is not entitled to an automatic 50% of the fee on every case brought to the firm by her prior to her resignation.
Since it is well established that attorneys may agree to any reasonable division of fees (Jontow v Jontow, 34 AD2d 744; Oberman v Reilly, 66 AD2d 686) the parties could, of course, have in their original agreement protected their legitimate interests. Such an agreement could have pro *701 tected the firm’s concern about young associates exploiting the firm in the early years in their careers, and could have also accommodated the young associates’ concern about being free to generate business without being permanently locked to the firm.
Both parties testified at the evidentiary hearing, however, that because of the euphoric atmosphere that usually prevails when parties conclude a new deal, neither gave any thought to what would happen if Ms. Turchin left the firm. This case may demonstrate more than anything else that we lawyers also need lawyers.
Where parties fail to enter into an agreement, it is elementary that the court may not construct an agreement on their behalf. Thus, when a firm’s employee resigns and is permitted to take cases with her and there is no agreement to cover the distribution of future fees, the fees are to be distributed by the same rules which would govern the distribution of fees between any attorneys who fail to agree on how fees are to be distributed. That rule is set forth in Matter of Szabo v Lipson, Sadow & Marcus (45 AD2d 1014), which holds that the fee is based on the “reasonable value” of the services. From that testimony at the evidentiary hearing the court finds that Ms. Turchin did 50% of the work on the file while an employee of the firm. In this case, it is coincidental that the court finds that Ms. Turchin did 50% of the work and the parties agreed to a 50% division of the fees. For the sake of clarity it should be reiterated that the division of the fees is not predicated on the agreement, since there was no agreement covering the circumstances of this case, but rather the division is based on the evidentiary hearing which determined the “reasonable value” of the work done while Ms. Turchin was an employee was 50% of the total work involved in settling the lawsuit. The “reasonable value” of the firm’s services therefore is 50% of the entire fee based on Ms. Turchin’s effort while the firm’s employee. Since the firm and Ms. Turchin agreed to divide the net fees earned by the firm on cases she brought in, it also follows that Ms. Turchin is entitled to 50% of the fees due to the firm, thus leading to the conclusion that Bauman, Greene, Sims & Kunkis, *702 P. C., is entitled to 25% of the fee in question, the balance to be paid to Michele Turchin.

 The case was actually settled by Paul S. Mirman, P. C., with whom Ms. Turchin had become associated. That relationship is not in dispute and does not impact on the issues between Ms. Turchin and her former employer.